UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BILLY GENE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-2408 (ESH) |
| v. | ) | |
| | ) | |
| BUREAU OF INDIAN AFFAIRS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, identified in the complaint as the Bureau of Indian Affairs and Tribal Law

Enforcement of the United States Department of Interior, the Criminal Division of the United

States Department of Justice, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the

Federal Bureau of Investigation, the U.S. Marshals Service, and the Executive Office for United

States Attorneys, by and through undersigned counsel, respectfully move this Court pursuant to

Rule 56, Fed. R. Civ. P., for judgment in their favor in this Freedom of Information Act, 5 U.S.C.

§ 552, ("FOIA") case concerning documents sought by the plaintiff relating to himself and

certain land. The grounds for this motion are set forth in the accompanying Defendants'

Memorandum in Support of Motion for Summary Judgment and Opposition to Plaintiff's Motion

for Summary Judgment. This motion is supported primarily by the declarations of: (1) Second

Declaration of Averill P. Graham, Bureau of Alcohol, Tobacco, and Firearms, and Explosives;

(2) John F. Boseker, Executive Office for United States Attorneys; (3) David M. Hardy, Federal

Bureau of Investigation; (4) Charles R. Hurlburt, United States Department of Interior; (5)

William E. Bordley, United States Marshals Service; (6) Kathy Hsu, United States Department of

Justice's Criminal Division; (7) Jeffrey O'Dell of the Bureau of Indian Affairs; (8) Annette

Jenkins of the Bureau of Indian Affairs; and (9) Wilson J. Moorer, Bureau of Prisons.  A

statement of material facts not in genuine dispute and a draft order are attached hereto.

Plaintiff should take notice that any factual assertions contained in the affidavits and other

attachments in support of defendants' motion will be accepted by the Court as true unless the

plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in

the defendant's attachments.  See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), Local Civil Rule

7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall
> set forth such facts as would be admissible in evidence, and shall show
> affirmatively that the affiant is competent to testify to the matters stated therein.
> Sworn or certified copies of all papers or parts thereof referred to in an affidavit
> shall be attached thereto or served therewith.  The court may permit affidavits to
> be supplemented or opposed by depositions, answers to interrogatories, or further
> affidavits.  When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere allegations or
> denials of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth specific facts
> showing that there is a genuine issue for trial.  If the adverse party does not so
> respond, summary judgment, if appropriate, shall be entered against the adverse
> party.

Fed. R. Civ. P. 56(e).

WHEREFORE, based on the foregoing, the defendants respectfully request that the Court

enter judgment in favor of defendants.

Dated: July 7, 2006.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


/s/_____
JANE M. LYONS, D.C. Bar #451737
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BILLY GENE HARRIS,          )
                                   )
        Plaintiff,         )
                                   )     Civil Action No. 05-2408 (ESH)
        v.              )
                                   )
BUREAU OF INDIAN AFFAIRS, et al.,   )
                                   )
        Defendants.      )

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This case involves the duty under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a, to process request made by the plaintiff to multiple government entities for information about himself. More specifically, plaintiff requested information from the Federal Bureau of Investigation, the Criminal Division of the U.S. Department of Justice, the Executive Office for United States Attorneys, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the United States Marshals Service, and the Department of Interior. Where responsive information was located, it has been carefully reviewed and processed for release to him. In short, as of the filing of this motion, where requests were received, the defendants have made available to the plaintiff all of the non-exempt, responsive documents which could be located after a reasonable search. Defendants have invoked several of the statutory exemptions under FOIA to withhold information for legally permissible reasons as reflected in the Vaughn index accompanying the declarations of personnel from all of the federal entities to which plaintiff directed FOIA requests or to which documents were referred as a result of those requests. Accordingly, because defendants have fully

performed their statutory duty and there are no genuine issues of material fact, defendants are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

## I.  Background

Plaintiff is currently incarcerated based on his conviction on two counts of first degree murder of a couple in their home in Oklahoma in 1989.  See United States v. Billy Gene Harris, 198 F.3d 259 (10th Cir. 1999) (affirming denial of relief under 28 U.S.C. § 2255 and summarizing the history of the criminal case); United States v. Billy Gene Harris, 956 F.2d 279 (10th Cir. 1992) (table) (affirming conviction but reversing the entry of a restitution order) (text of the decision is available at 1992 WL 33210).  According to the Complaint, plaintiff sent a letter dated May 7, 2005 to the Director of the Osage Indian Agency requesting for information "in connection to his name and the surplus allotment land SW¼-27-35-8 in connection with the time span including February, 1989."  Complaint, Count I, ¶ 1.  Shortly before that, plaintiff also alleges that he sent a letter to the Osage Police Department requesting all information about himself.  Id. ¶ 5.  Plaintiff did not receive any response, and although the Department of Interior has no record of having received plaintiff's request, it has also not been able to locate any responsive records after a reasonable search.  See Declaration of Charles R. Hurlburt ("Hurlburt Dec.").

By letters dated April 30, 2005 or May 7, 2005, plaintiff requested all records about himself from the Criminal Division of the Department of Justice, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI"), the United States Marshals Service ("USMS"), and the Executive Office for United States Attorneys ("EOUSA"), all of which are components of the United States Department of Justice.  Although

AFT had no record of having received plaintiff's FOIA request, upon receiving the complaint in this case, ATF tracked down correspondence October, 2005 from the Office of Information and Privacy ("OIP") that would have alerted ATF to the existence of the FOIA request but was never received by ATF. See 2d Graham Dec.¶¶ 6-7. After securing the FOIA request, ATF searched its computerized indices using plaintiff's name and initially located a file associated with an investigation in its Dallas, Texas field office. Id. ¶ 8-11. However, after the documents were processed for release, ATF personnel realized that those records were associated with a different person named Billy Gene Harris by using other identifying information. Id. ¶ 11 & n.2 Because ATF has no records from the Billy Gene Harris who is the plaintiff in this case, no responsive records have been released by ATF. Id. ¶¶ 11-15.

USMS likewise has no record of having received plaintiff's FOIA request directly from plaintiff, but did receive correspondence from OIP concerning it in July, 2005. Declaration of William E. Bordley ("Bordley Dec."), ¶ 2. After USMS received a verification of plaintiff's identity from him, USMS acknowledged plaintiff's request and subsequently searched the records located in its Northern District of Oklahoma district, presumably based on the known location of plaintiff's offenses. Id. ¶¶ 3-8. USMS identified 82 pages of records, seven of which had originated with the Bureau of Prisons ("BOP"). Id. ¶¶ 9-10. On January 25, 2005, USMS released 75 pages of material to plaintiff in total; of those, 26 pages contained material that was redacted under Exemption 2 or 7(C). Id. ¶ 2 & Exh. F. USMS referred the seven pages originating with BOP back to BOP for a direct response to plaintiff. See Declaration of Wilson J. Moorer ("Moorer Dec."), ¶ 4. BOP ultimately released three pages in their entirety, two pages

-3-

in part, and made the two remaining pages available for plaintiff's inspection at the federal facility where he is incarcerated.  Id. ¶ 5.

The Criminal Division also failed to receive any FOIA request directly from plaintiff. Declaration of Kathy Hsu ("Hsu Dec."), ¶¶ 4-5.  But on August 30, 2005, the Criminal Division also became aware of the request through communication with OIP after plaintiff appealed the Criminal Division's supposed non-response.  Id. ¶ 6.  In response, the Criminal Division sent plaintiff a letter explaining that it needed additional information in order to search for responsive information and to verify plaintiff's identity.  Id. ¶ 7.  The Criminal Division's December 17, 2005 letter enclosed several forms to assist plaintiff in making a proper FOIA request and notified plaintiff that it was closing the initial request he had made.  Id.  Plaintiff failed to respond to the Criminal Division's letter.  Id. ¶ 10.  As a result of both its failure to receive any request in the first instance and plaintiff's failure to indicate which of the many record systems of the Criminal Division he wanted searched and identification information necessary to perform any search, the Criminal Division has been unable to locate responsive information.  Id. ¶¶ 11-14.

The FBI's Oklahoma City field office received plaintiff's FOIA request dated April 30, 2005.  Declaration of David M. Hardy ("Hardy Dec."), ¶ 5 & n.3.  Plaintiff's letter requested any and all information about himself in the FBI's files.  Id. & Exh. A.  By letter dated June 6, 2005, the FBI advised plaintiff that it had located approximately 460 pages of material which could be related to his request and that fees associated with copying the documents if they were all released would total $36.00.  Id. ¶ 7.  FBI requested that plaintiff agree to pay the estimated fees prior to processing.  Id.  After plaintiff appealed to the OIP, FBI released 212 pages to plaintiff in November, 2005 with certain material redacted under an array of FOIA exemptions.  Id. ¶ 10.

-4-

FBI also referred one page to the Department of Interior for direct response.  Id. ¶¶ 66-67.  In addition, FBI received a significant number of documents referred to it by EOUSA, and FBI processed them for release as well.  Id. ¶¶ 68-71.

EOUSA received plaintiff's FOIA request on May 11, 2005.  Declaration of John F. Boseker ("Boseker Dec."), ¶ 6 & Exh. A.  EOUSA subsequently located records as a result of two searches, and ultimately released certain information to plaintiff, with some material redacted, and referred 176 pages to the FBI.  Id. ¶¶ 7-14.  EOUSA also advised plaintiff that there were publicly available records also in its files which could be obtained by making a specific request for them and paying the fees associated with copying them.  Id. ¶ 11.

## II.  Argument

The Freedom of Information Act, 5 U.S.C. § 552, as amended, ("FOIA"), provides generally a statutory right of access to certain government information.  Accordingly, FOIA directs government agencies to disclose agency records to citizens who request them, unless the requested records fall within one of FOIA's nine enumerated exemptions.  In this case, defendants have justified nondisclosure of certain information contained in documents under **number** of the nine exemptions.

### A.    Standard for Summary Judgment

In a FOIA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact and that the moving parties are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309, 313 (D.C. Cir. 1988) (conflict in declarations alone insufficient to preclude entry of summary

judgment); <u>Weisberg v. Department of Justice</u>, 627 F.2d 365, 368 (D.C. Cir. 1980).  The Court

exercises <u>de novo</u> review over FOIA matters, and the burden is on the agency to justify all

nondisclosures.  5 U.S.C. § 552(a)(4)(B); <u>Department of Justice v. Reporters Comm. For</u>

<u>Freedom of the Press</u>, 489 U.S. 749, 755 (1989).  In carrying its burden of proof, agencies may

rely on declarations of government officials which courts normally accord a presumption of

expertise in FOIA as long as the declarations are sufficiently clear and detailed and submitted in

good faith.  <u>Oglesby v. Department of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>see</u> <u>Hayden v.</u>

<u>National Security Agency</u>, 608 F.2d 1381, 1387 (D.C. Cir. 1979); <u>Pharmaceutical Mfg. Ass'n v.</u>

<u>Weinberger</u>, 411 F. Supp. 576, 578 (D.D.C. 1978).  Once the Court determines that the

declarations are sufficient, it need not inquire further.

### B.    Plaintiff Failed To Perfect His FOIA Request to the Criminal Division

FOIA confers jurisdiction upon the Court to provide relief to a plaintiff only where

requested documents have been "improperly withheld" by an agency.  5 U.S.C. § 552(a)(4)(B).

The courts have interpreted this section of the statute to mean that jurisdiction exists only upon a

showing by the plaintiff that the defendant (1) improperly (2) withheld (3) agency records.  <u>See</u>

<u>Kissinger v. Reporters Committee for Freedom of the Press</u>, 445 U.S. 136, 150 (1980).  Indeed,

"[t]he plaintiff must show that the agency 'contravened all three components of this obligation'

in order for jurisdiction to be valid."  <u>Kuffel v. U.S. Bureau of Prisons</u>, 882 F. Supp. 1116, 1120

(D.D.C. 1995) (citing <u>Kissinger</u>, 445 U.S. at 151).  Absent such a showing, FOIA confers no

"judicial authority to devise remedies and enjoin agencies."  <u>Id.</u>

It is well-established in administrative law that "no one is entitled to judicial relief for a

supposed or threatened injury until the prescribed administrative remedy has been exhausted."

McKart v. United States, 395 U.S. 185, 193 (1969).  Exhaustion of such administrative remedies is required under FOIA before a party can seek judicial review.  Dettmann v. United States Dep't of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986).  The purpose of the exhaustion requirement is to give the agency " an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision," as well as to allow " the top managers of an agency to correct mistakes made at lower levels and thereby obviate[] unnecessary judicial review."  Oglesby v. United States Dep't of the Army, 920 F.2d 57, 61 (D.C. Cir. 1990).

A FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester fails to comply with the administrative procedures set forth under FOIA, including: (1) providing a request to the particular office identified in the agency's FOIA regulations, Kessler v. United States, 899 F. Supp. 644, 645 (D.D.C. 1995); (2) providing the agency the required proof of identity, Summers v. United States Dep't of Justice, 999 F.2d 570, 572-73 (D.C. Cir. 1993); (3) reasonably describing the records sought, Gillin v. I.R.S., 980 F.2d 819, 822-23 (1st Cir. 1992); (4) complying with fee requirements, Trueblood v. United States Dep't of Treasury, 943 F. Supp. 64, 68 (D.D.C. 1996); and (5) administratively appealing a denial of records, Oglesby, 920 F.2d at 61.  See also 5 U.S.C. § 552(a)(3) (requests must be made "in accordance with [the agency's] published rules stating the time, place, fees (if any), and procedures to be followed . . . .").  Where a FOIA plaintiff attempts to obtain judicial review without having first fully exhausted his administrative remedies, his lawsuit is subject to dismissal.  Oglesby 920 F.2d at 71; Hidalgo v. FBI, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003).

"The first step in exhausting administrative remedies under the FOIA is filing a proper FOIA request"—a request made "in accordance with [the agency's] published rules."  Wicks v.

Coffrey, 2002 WL 1000975, *2 (E.D. La. 2002).[1]  By the same token, it is well established that a

FOIA request may not be initiated through Court filings.  See Pray v. Dep't of Justice, 902 F.

Supp. 1, 2-3 (D.D.C. 1995) (granting summary judgment in favor of defendant with respect to

request for records "made only in response to the government's motion for summary judgment");

Muhammad v. U.S. Bureau of Prisons, 789 F. Supp. 449, 450 (D.D.C. 1992) (dismissing FOIA

claim for failure to exhaust where Plaintiff "filed his [FOIA] request directly in this Court").

Nor may a FOIA requester expand the scope of his FOIA request, or cure a deficient FOIA

request, through court filings.  See Gillin, 980 F.2d at 823, n. 3 (1st Cir. 1992) (plaintiff's

attempt to clarify his FOIA request through discovery requests in litigation "amounted to an

impermissible attempt to expand a FOIA request after the agency has responded and litigation

has commenced"); Pray, 902 F. Supp. at 2-3.

In this case, after receiving plaintiff's initial FOIA request, the Criminal Division of the

United States Department of Justice requested additional information from plaintiff, including a

Privacy Act Identification and Request Form and a specific list of the particular records systems

plaintiff wished to have searched.  See Hsu Dec. ¶¶ 6-7.  Plaintiff failed to respond to the

Criminal Division's December 17, 2005 letter.  Id. ¶ 10.  Because both the Privacy Form waiver

and the specification of particular databases is crucial to perfect a FOIA request, plaintiff never

---

[1] Under DOJ regulations, a FOIA request must be made by "writing directly to the
Department component that maintains" the records sought.  28 C.F.R. § 16.3(a).  If the requester
is seeking records someone other than himself, the request should include "either a written
authorization signed by that individual permitting disclosure to you or proof that that individual
is deceased."  Id.

made a proper request to the Criminal Division and, as a result, no search was required.[2]  Id. ¶¶

12-13; see 28 C.F.R. § 16.41(d) (requiring verification of identity).

    **C.**    **Defendants Otherwise Performed Reasonable Searches for Responsive
Documents**

    In a FOIA case, where a search is undertaken, the agency must establish that it has

conducted a search reasonably calculated to uncover all responsive records.  Weisberg v. Dept. of

Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  An agency can establish the reasonableness of its

search by affidavits if they are relatively detailed, non-conclusory, and made in good faith.

Weisberg, 745 F.2d at 1485.  Summary judgment is appropriate where the agency submits  a

"'reasonably detailed affidavit, setting forth the search terms and the type of search performed,

and averring that all files likely to contain responsive materials (if such records exist) were

searched'", unless "a review of the record raises substantial doubt" about the adequacy of the

search.  Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999),

quoting Oglesby v. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

    The FOIA does not require that an agency search every division or field office in

response to a FOIA request when responsive documents are likely to be located in one place.

Marks v. Department of Justice, 578 F.2d 261, 263 (9th Cir. 1978).  "When a request does not

specify the locations in which an agency should search, the agency has discretion to confine its

inquiry to a central filing system if additional searches are unlikely to produce any marginal

return; in other words, the agency generally need not 'search every record system.'"  Campbell v.

U.S. Department of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998), quoting Oglesby, 920 F.2d at 68.

---

    [2]  Plaintiff, of course, is not without recourse.  If he still wishes to obtain the information,
he may make a new FOIA request.  Any such request, however, is not part of this litigation.

"The agency is not required to speculate about potential leads" to the location of responsive documents, Kowalczyk v. Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996), although it is required "to follow through on obvious leads to discover requested documents." Valencia-Lucena, 180 F.3d at 325.

The declarations from ATF, FBI, USMS, EOUSA, and DOI plainly reveal that each one thoroughly searched for documents in response to plaintiff's request under FOIA.  For example, using only plaintiff's name, ATF searched the Treasury Enforcement Communications System ("TECS"), which is a comprehensive system of records used by federal law enforcement and under which, among other things, ATF indexes its files.  2d Graham Dec. ¶¶ 8-10 .  TECS is a computerized information system designed to identify individuals and businesses suspected of or involved in violation of federal law.  Id.  TECS is also a communications system permitting message transmittal between Treasury law enforcement offices and other national, state, and local law enforcement agencies.  Id.  TECS provides access to the FBI's National Crime Information Center ("NCIC") and the National Law Enforcement Telecommunication Systems ("NLETS") with the capability of communicating directly with state and local enforcement agencies.  TECS contains information from ATF including:  wanted persons and fugitives; known and suspected violators of laws falling within the jurisdiction of ATF; felons and dishonorably discharged veterans who have requested relief to own firearms and/or explosives under the Gun Control Act of 1968; violent felons; and gangs and terrorists.  Id.

In this case, a search of TECS identified that ATF had records concerning "Billy Gene Harris" only in one of its Texas field office under a particular investigation number. 2d Graham Dec. ¶ 11 .  However, after processing those records, ATF was provided plaintiff's social security

number and date of birth and realized that the records did not relate to plaintiff.  Id. & n.2.

Because TECS did not include records for any other person with the same name, id. ¶ 12, ATF

subsequently searched its N-Force record system and likewise found no records.  Id. ¶¶ 13-14.

Because TECS and N-Force do not have records associated with plaintiff, and there are no other

record systems likely to contain information about a person whose association with the agency

was a criminal investigation, none were responsive to his request and none were released.  Id. ¶

15.

        Because the TECS system is comprehensive database of ATF's investigatory and other

activities and did not reveal any additional investigations or information relating to plaintiff, all

locations reasonably likely to contain information responsive to plaintiff's request have been

searched by means of the computer databases and physical review of the files identified.

Accordingly, the Court should find that defendant ATFE conducted a reasonable search for

records responsive to plaintiff's FOIA request.  Id.

        Likewise, the FBI searched its Central Records System for records concerning plaintiff

using his name, date of birth, and social security number, and identified one main file: 198A-OC-

49823.  See Hardy Dec. ¶ 16; see also id. ¶¶ 11-15 (describing the records maintained in the

Central Records System and methods of searching it).  Because the Central Records System

contains all of FBI's investigative law enforcement records and plaintiff's connection with the

FBI is solely as a subject of its investigation, there are no other places reasonably likely to

contain responsive records at FBI.  Id.

        Using computer case tracking systems, EOUSA located records responsive to plaintiff's

request for information about himself in the U.S. Attorney's Office for the Northern District of

-11-

Oklahoma. <u>See</u> Boseker Dec. ¶¶ 15-17. Plaintiff's FOIA request itself was directed to and specified that office as the one involved in his prosecution. <u>Id</u>. Exh. A. The records were all located in the criminal case file identified as <u>U.S. v. Billy G. Harris</u>, Cr. No. 89-CR-72-02-B and the associated post-conviction appellate and action files within the Criminal Case File System. <u>Id</u>. ¶¶ 15-18. Because the person who initially conducted a search for responsive records had retired from employment by the time this litigation was instituted, EOUSA repeated the search to ensure that all responsive records had been located. <u>Id</u>.[3]

The Department of Interior's Bureau of Indian Affairs also performed a thorough search for documents concerning plaintiff's request and located records responsive to plaintiff's request for information about a particular tract of land. <u>See</u> Declarations of Charles R. Hurlburt, Annette Jenkins, and Jeffrey O'Dell. The only documents located were correspondence with plaintiff concerning his requests and documents generated during plaintiff's criminal case. Although plaintiff should already have copies of these documents, they are also attached to the Hurlburt declaration.

### C. The Referrals of Documents to Originating Entities Was Reasonably and Properly Done

When an agency locates responsive documents in its files which originated with another agency or a different component of the same agency, it must consult with or refer for direct response those documents. <u>See</u>, <u>e.g.</u>, <u>Stone v. Defense Investigative Serv.</u>, 1992 WL 52560, at *1 (D.D.C. Feb. 24, 1992) (recognizing that agencies may refer responsive records to originating agencies in responding to FOIA requests), <u>aff'd</u>, 978 F.2d 744 (D.C. Cir. 1992) (table).

---

[3] EOUSA was unable to contact the Assistant United States Attorney who prosecuted plaintiff's case because he is deceased. <u>See</u> Boseker Dec. ¶ 18.

Department of Justice regulations direct the orderly process of document referrals to other agencies and components.  See 28 C.F.R. § 16.4(h).  Ordinarily, as the EOUSA, USMS and the FBI did in this case, the agency should notify the requester about the referrals.  See Boseker Dec., ¶ 10; Bordley Dec. ¶ 10; Hardy Dec. ¶ 10.  Once referred, the referring agency retains responsibility for ensuring that the FOIA requester is provided an appropriate response by the originating agency.  E.g., Peralta v. United States Attorney's Office, 136 F.3d 169, 175 (D.C. Cir. 1998); Paisley v. CIA, 712 F.2d 686, 691 (D.C. Cir.1983), vacated in part on other grounds, 724 F.2d 201 (D.C. Cir.1984).  One way of discharging its obligation is for either entity to provide the requester with supplemental declarations which explain any assertions of  applicable exemptions under FOIA or otherwise or release the forwarded documents.  Grove v. Department of Justice,  802 F. Supp. 506, 518 (D.D.C. 1992).

In this case, EOUSA referred seven pages of material to the FBI which is accounted for in FBI's declaration.  See Hardy Dec. ¶¶ 69-72.  The USMS referred seven pages to the Bureau of Prisons and the treatment of those pages is justified in the Declaration of Wilson J. Moorer ("Moorer Dec.").  FBI referred one document to the DOI and DOI released it in its entirety shortly before this motion was filed.  Accordingly, all referred documents have been accounted for an any withholdings are fully documented in the declarations supporting this motion.

**D.    All Withholdings Are Reasonable and Appropriate**

In this case, FBI, EOUSA, USMS, and BOP justify their assertion of the relevant exemptions through both a general description of their application as well as by providing a detailed index, commonly referred to as a Vaughn index.  The purpose of a Vaughn index is "to permit adequate adversary testing of the agency's claimed right to an exemption."  NTEU v.

Customs, 802 F.2d 525, 527 (D.C. Cir. 1986), citing Mead Data Central v. United States Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977), and Vaughn v. Rosen, 484 F.2d 820, 828 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record". NTEU, 802 F.2d at 527 n.9. "The form of the Vaughn index is unimportant and affidavits providing similar information can suffice." Spirko v. U.S. Postal Service, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998), citing Gallant v. NLRB, 26 F.3d 168, 172-73 (D.C. Cir. 1994).

### 1.    USMS and FBI Properly Applied Exemption 2

Exemption 2 under FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Not long after FOIA was passed, the Supreme Court declared that Exemption 2 was intended to relieve agencies of the burden of assembling and providing access to any "matter in which the public could not reasonably be expected to have an interest" and matters of public interest "where disclosure may risk circumvention of agency regulation." Department of Air Force v. Rose, 425 U.S. 352, 369-70 (1976). Subsequently, courts have approved two general categories of withholdings under Exemption 2: (1) internal matters of a relatively trivial nature (sometimes referred to as "low-2"); and (2) more substantial internal matters for which disclosure would risk circumvention of a legal requirement (sometimes called "high-2"). Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992); see Crooker v. ATF, 670 F.2d 1051 (D.C. Cir. 1981) (en banc) (setting forth a two part test for high-2 material).

In this case, USMS withheld bank routing and account numbers on a U.S. Treasury check and other internal markings. Bordley Dec. ¶ 11. FBI likewise withheld internal telephone

-14-

numbers of FBI support personnel and internal source symbol numbers relating to tracking

confidential informants.  Hardy Dec. ¶ 25-27.  These file numbers are essentially computer codes

which are of no legitimate public interest.  Id.  Disclosure of these items would risk allowing

individuals to perpetrate fraud or to gain access to information systems or personnel which could

disrupt operations.  Id.  Because this information is purely internal and disclosure would

significantly risk circumvention of the law, disclosure is plainly unwarranted.  Prows v. United

States Dep't of Justice, No. 90-2561, 1996 WL 228463, at *2 (D.D.C. Apr. 25, 1996) (protecting

internal DEA markings and phrases that could, if released, facilitate improper access to sensitive

information); Hall v. United States Dep't of Justice, No. 87-474, 1989 WL 24542, at *2 (D.D.C.

Mar. 8, 1989) (protecting various items that "could facilitate unauthorized access to [agency]

computer systems"); Institute for Policy Studies, 676 F. Supp. at 5 (exempting record revealing

sensitive portions of agency's computer system which could be used to locate system's

vulnerabilities); see Windels, Marx, Davies & Ives v. Department of Commerce, 576 F. Supp.

405, 412 (D.D.C. 1983) (protecting computer program under Exemptions 2 and 7(E) because it

merely instructs computer how to detect possible violations of law and does not regulate or

modify public behavior).  Therefore, USMS's and FBI's assertion of Exemption 2 should be

upheld.

### 2.    EOUSA and FBI Appropriately Applied Exemption 5

EOUSA applied Exemption 5 under FOIA to protect information contained in

handwritten notes by the prosecuting Assistant United States Attorney during the investigation

and prosecution of plaintiff and an intra-agency memorandum regarding the prosecution of

plaintiff.  Boseker Dec. ¶¶ 26-29.  FBI withheld one unsigned draft document prepared for

submission to the court in connection with plaintiff's criminal proceedings.  Hardy Dec. ¶ 29-30.

These documents describe the government's investigation, thought processes, extensive

comments on the strengths and weaknesses of the case, and exploration of possible alternatives.

Id.  Such analysis is both pre-decisional and deliberative and would not be available to plaintiff

even in the context of his criminal case.  Some of the documents were prepared by counsel or at

the direction of the prosecutor, as such, these documents constitute work product which is also

privileged.  Exemption 5 protects this material because it exempts from disclosure both inter- and

intra-agency communications which would not be available by law to a party other than an

agency in litigation with the particular agency.  5 U.S.C. § 552(b)(5).  In other words, Exemption

5 allows agencies to withhold documents which would normally be privileged in the context of

civil discovery.  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); Martin v. Office of

Special Counsel, 819 F.2d 1181, 1184-85 (D.C. Cir. 1987) (making clear that all civil discovery

privileges apply through Exemption 5).  The memoranda discusses potential witnesses, evidence,

and strategy for conducting ongoing investigations such that it constitutes attorney work product.

See Hickman v. Taylor, 329 U.S. 495, 509-510 (1947).  Work product has traditionally been

recognized as within the scope of Exemption 5.  See SafeCard Servs. v. SEC, 926 F.2d 1197,

1202 (D.C. Cir. 1991); Feshbach v. SEC, 5 F. Supp. 2d 774, 783 (N.D. Cal. 1997) (protecting

documents pertaining to preliminary examination "based upon a suspicion of specific

wrongdoing and represent[ing] an effort to obtain evidence and to build a case against the

suspected wrongdoer.").  This communication falls within the zone of Exemption 5 because the

letter is covered by the deliberative process privilege.  In Russell v. Department of the Air Force,

682 F.2d 1045 (D.C. Cir. 1982), the D.C. Circuit recognized the importance of shielding the

decision making processes of government agencies.  Id. at 1048.  Therefore, the Court should approve defendant EOUSA's withholdings under Exemption 5.

### 3.     Defendants Properly Applied Exemptions 6 and 7(C).

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." Lepelletier v.  FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999), (emphasis supplied), quoting Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." U.S. Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 763 (1989).

In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." Lepelletier, 164 F.3d at 46 (interior quotation marks omitted), citing United States Dep't of Defense Dep't of Military Affairs v.  FLRA, 964 F.2d 26, 29 (D.C. Cir. 1992), quoting Department of Air Force v. Rose, 425 U.S. 352, 372 (1976).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" Lepelletier, 164

F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), quoting

United States Dep't of Defense v. FLRA, 510 U.S. 487, 497 (1994). See also Reporters

Committee, 489 U.S. at 773.   Information that does not directly reveal the operation or activities

of the federal government "falls outside the ambit of the public interest that the FOIA was

enacted to serve." Id. at 775.  Further, "something, even a modest privacy interest, outweighs

nothing every time." National Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879

(D.C. Cir. 1989); but see Lepelletier, 164 F.3d at 48 (in extraordinary circumstance where the

individuals whose privacy the government seeks to protect have a "clear interest" in release of the

requested information, the balancing under Exemption 6 must include consideration of that

interest).

     FBI invoked Exemption 6 in conjunction with Exemption 7(C), which is addressed

below, to protect names and other identifying information of persons other than plaintiff whose

right to personal privacy outweighed public disclosure.  Hardy Dec. ¶¶ 32-43.  FBI's coded

Vaughn index specifies the reasons for each category of individuals.  For example, FBI withheld

the names of local, state, and federal law enforcement personnel, as well as third parties whose

names are mentioned in the investigative files and information such as Social Security Numbers

which could be used to identify individuals.  Id. ¶¶ 33-43.  Providing such information would

unacceptably risk allowing others to access a great deal of private financial and other information

relating to those visitors and expose the individuals to unnecessary embarrassment.  Id. &

Vaughn Index.

     FBI, USMS, EOUSA, and BOP all asserted Exemption 7(C) of the FOIA which exempts

from mandatory disclosure information compiled for law enforcement purposes when disclosure

"could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(7)(C).  The records of these organizations are clearly compiled for law

enforcement purposes as they relate directly to criminal investigations and prosecution of

plaintiff.  E.g., Haydy Dec. ¶ 45 (discussing FBI's law enforcement mission); Boseker Dec. ¶ 20.

When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference

than do like claims by other agencies."  Keys v. U.S. Dep't of Justice, 830 F.2d 337, 340 (D.C.

Cir. 1987), citing Pratt, 673 F.2d at 418.  A criminal law enforcement agency must simply show

that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on

information sufficient to support at least "a colorable claim" of its rationality.'"  Keys, 830 F.2d at

340, quoting Pratt, 673 F.2d at 421.  In the last couple of years, the Supreme Court affirmed the

broad scope of Exemption 7(C) in National Archives and Records Admin. v. Favish, 541 U.S.

157 (2004).  Only where the requester can produce meaningful evidence  – "more than a bare

suspicion" – which would cause a reasonable person to believe that the government had engaged

in impropriety should the Court even consider balancing the privacy interests against the public

interest in disclosure.  Favish, 124 S. Ct. at 1581.  Plaintiff here does not allege any such

impropriety in his complaint.

        Once an agency has demonstrated that the records were compiled for law enforcement

purposes, the Court must next consider whether the release of information withheld "could

reasonably be expected to constitute an unwarranted invasion of personal privacy."  This

determination necessitates a balancing of the individual's right to privacy against the public's

right of access to information in government files.  See, e.g., U.S. Dep't of Justice v. Reporters

Committee for Freedom of the Press, 489 U.S. 749, 776-80 (1989).

-19-

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' Department of Air Force v. Rose, [425 U.S. 352, 372 (1976)], rather than on the particular purpose for which the document is being requested." Reporter's Committee, 489 U.S. at 772 (internal quotation marks omitted).  Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775.  That public interest is to "shed[] light on an agency's performance of its statutory duties." Id. at 772.  The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." Perrone v. FBI, 908 F. Supp. 24, 26 (D.D.C. 1995), citing Senate of Puerto Rico v. Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant" that matters. Brown v. FBI, 658 F.2d 71, 75 (2d Cir.1981).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" Davis v. Department of Justice, 968 F.2d 1276, 1282  (D.C. Cir.1992) (quoting Reporters Committee, 489 U.S. at 773) (internal quotation marks omitted). Further, courts have explicitly recognized that the privacy interests of third parties mentioned in law enforcement files are  "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir.1991).  Our court of appeals has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of

Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

Exemption 7(C) consistently has been held to protect the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. Reporters Committee, 489 U.S. at, 780); Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity,'" quoting Dunkelberger v. Dep't of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990)). Indeed, an agency may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Committee, 489 U.S. at 780; Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 893, 895-96 (D.C. Cir. 1995); SafeCard Services, 926 F.2d at 1206.

Likewise, the names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C). Davis, 968 F.2d at 1281; Lesar v. U.S. Dep't of Justice, 636 F.2d 472, 487-88 (D.C. Cir. 1980). Review of the Vaughn index shows that many of the excisions made by the agencies relate to protecting the identity of agents and employees of the agencies. Hardy Dec. ¶¶ 48-49, 58 & Exh. G; Boseker Dec. ¶¶ 21-23; Bordley Dec. ¶¶ 12, 15; Moorer Dec. ¶. Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Professionals for Social Responsibility, 72 F.3d

-21-

at 904; <u>Farese v. U.S. Department of Justice</u>, 683 F. Supp. 273, 275 (D.D.C. 1987).  The <u>Vaughn</u>

index provided reflects clearly that Exemption 7(C) was appropriately applied in this case to

protect names and personal identifying information of individuals.  <u>See also</u> Hardy Dec. ¶¶ 50-

57; Moorer Dec. ¶ 8.

### 4.    FBI Properly Invoked Exemption 7(D)

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information

compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential source,
> including a State, local, or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and, in the case of a record or
> information compiled by a criminal law enforcement authority in the course of a
> criminal investigation or by an agency conducting a lawful national security
> intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the

Government's channels of confidential information."  <u>Birch v. United States Postal Serv.</u>, 803

F.2d 1206, 1212 (D.C. Cir. 1986).[4]

When invoking Exemption 7(D), the agency must demonstrate that the information was

compiled for a law enforcement purpose, that an informant provided the information under either

an express or an implied promise of confidentiality and, under the first clause of 7(D), that

---

[4]  The term "confidential source" is very broad.  <u>See</u>, <u>e.g.</u>, <u>Gula v. Meese</u>, 699 F. Supp.
956, 960 (D.D.C. 1988) (crime victims); <u>Putnam v. United States Dep't of Justice</u>, 873 F. Supp.
705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies that the
information was provided in confidence or in trust, with the assurance that it would not be
disclosed to others.  <u>Dow Jones & Co. v. Department of Justice</u>, 917 F.2d 571, 575-76 (D.C. Cir.
1990).  As such, "the question is not whether the requested document is of the type that the
agency usually treats as confidential, but whether the particular source spoke with an
understanding that the communication would remain confidential."  <u>United States Dep't of
Justice v. Landano</u>, 508 U.S. 165, 172 (1993).

disclosure could reasonably be expected to disclose the source's identity.  United States Dep't of Justice v. Landano, 508 U.S. 165, 171-72 (1993).  If an individual has not been given an express promise of confidentiality, the agency may demonstrate that a source has been given an implied promise of confidentiality based upon the circumstances of the case.  Landano, 508 U.S. at 179-80.  The government may establish implied assurances of confidentiality by describing "generic circumstances in which an implied assurance of confidentiality fairly can be inferred."  Id. at 179.  However, once an agency establishes an express or implied promise of confidentiality, it is extremely difficult to overcome.  In order to do so, the plaintiff must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'"  Parker, 934 F.2d at 378, quoting Dow Jones & Co. v. Department of Justice, 908 F.2d 1006, 1011 (D.C. Cir.), reh'g denied en banc, 917 F.2d 571 (D.C. Cir. 1990).

The Court in Landano stressed two factors to be considered in determining whether an implied promise of confidentiality exists:  "the nature of the crime investigated and the witness' relation to it."  Id. at 181.  In applying these factors, a key consideration is the potential for retaliation against the source.  Id. at 179-180; see also, Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (implied assurance of confidentiality found where crimes investigated were serious and violent and sources were "sufficiently close to" targets of investigation); Hale v. Department of Justice, 99 F.3d 1025, 1031 (10th Cir. 1996).

Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well.  The first clause of Exemption 7(D) not only protects obviously identifying information,

such as an informant's name and address, but also all information which would tend to reveal the source's identity. Pollard v. FBI, 705 F.2d 1151, 1155 (9th Cir. 1983); see also Stone v. Defense Investigative Serv., 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); Doe v. U.S. Dep't of Justice, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity"). The second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.

Importantly, and unlike some other FOIA exemptions, Exemption 7(D) does not require a balancing of public and private interests. Parker v. Department of Justice, 934 F.2d 375, 380 (D.C. Cir. 1991) (the "judiciary is not to balance interests under Exemption 7(D)"); Jones v. FBI, 41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure"). Therefore, "once the agency receives information from a '"confidential source" during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection.'" Parker, 934 F.2d at 380 (editing by the court, quoting Lesar v. United States Dep't of Justice, 636 F.2d 472, 492 & n. 114 (D.C. Cir. 1980)). Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, Ortiz v. HHS, 70 F.3d 729, 733 (2d Cir. 1995), cert. denied, 517 U.S. 1136 (1996), and after the death of the source. Campbell v. Dept. of Justice, 164 F.3d 20, 33 n.14 (D.C. Cir. 1998).

FBI utilized confidential informants in plaintiff's case.  Hardy Dec. ¶¶ 62-63.  FBI's

records indicates that an implied promise of confidentiality is appropriate here because plaintiff

was investigated and convicted for violent crimes.  Id.; see, e.g., Parker v. Department of Justice,

934 F.2d 375, 378 (D.C. Cir. 1991); Dow Jones & Co. v. Department of Justice, 917 F.2d 571,

576 (D.C. Cir. 1990).  Disclosure of their identities would not only risk exposing the confidential

informants to harassment and possible danger but also hamper the FBI's ability to elicit

cooperation from future confidential sources.  Id.  Accordingly, FBI's withholding of certain

information under Exemption 7(D), sometimes in conjunction with Exemption 6 or 2, was

proper.

### 5.    ATF Correctly Withheld Certain Information Under Exemption 7(E)

FBI also applied Exemption 7(E) under FOIA to withhold information about certain

investigative techniques, including polygraph techniques.  Hardy Dec. ¶¶ 65-66. Because this

information contains the investigative method which the FBI maintains internally, it is clear that

FBI properly applied Exemption 7(E).

Exemption 7(E) of the FOIA provides protection for all information compiled for law

enforcement purposes when release "would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The first clause of Exemption 7(E) affords

"categorical" protection for "techniques and procedures" used in law enforcement investigations

or prosecutions.  Smith v. Bureau of Alcohol, Tobacco & Firearms, 977 F. Supp. 496, 501

(D.D.C. 1997), citing Fisher v. United States Dep't of Justice, 772 F. Supp. 7, 12 n. 9 (D.D.C.

1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992). While Exemption 7(E)'s protection is generally

limited to techniques or procedures that are not well known to the public, even commonly known

procedures may be protected from disclosure if the disclosure could reduce or nullify their

effectiveness. See, e.g., Coleman v. FBI, 13 F. Supp. 2d. 75, 83 (D.D.C. 1998) (applying 7(E) to

behavioral science analysis and details of polygraph examination); Butler v. Treasury, 1997 WL

138720 at *4 (D.D.C. 1997) (applying 7(E) to types of monitoring and type of equipment used in

surveillance); Perrone v. FBI, 908 F. Supp. 24, 28 (D.D.C. 1995) (applying 7(E) to type of

polygraph test, type of machine used, polygraph questions and sequence). In justifying the

application of Exemption 7(E) the agency may describe the general nature of the technique while

withholding the full details. See e.g. Bowen v. FDA, 925 F.2d 1225, 1228 (9th Cir. 1991). The

agency is not, however, required to describe secret law enforcement techniques, even in general

terms, if the description would disclose the very information sought to be withheld. Coleman, 13

F. Supp. 2d at 83; Smith, 977 F. Supp. at 501; Butler, 1997 WL 138720 at *4.

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement

investigations or prosecutions if [their] disclosure could reasonably be expected to risk

circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Accordingly, this clause of the Exemption

protects any "law enforcement guideline" that pertains to the prosecution or investigative stage of

a law enforcement matter whenever its disclosure "could reasonably be expected to risk

circumvention of the law." See, e.g., PHE, Inc. v. United States Dep't of Justice, 983 F.2d 248,

251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available

to its agents might encourage violators to tamper with those sources of information and thus

inhibit investigative efforts"); Jimenez v. FBI, 938 F. Supp. 21, 30 (D.D.C. 1996) (applying

-26-

Exemption 7(E) to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang member).

Both aspects of Exemption 7(E) apply to the investigative techniques and guidelines which, if released, would enable individuals to avoid prosecution by structuring their activities to avoid ATF's detection. Hardy Dec. ¶¶ 65-66 . Accordingly, ATF properly withheld these materials under Exemption 7(E).

### 6.      BOP Properly Exempted Material From Release Based on Exemption 7(F)

In conjunction with its treatment of the responsive documents under Exemption 7(C), BOP also applied Exemption 7(F). Moorer Dec. ¶ 7. Exemption 7(F) allows agencies to withhold identifying information of individuals when disclosure "could reasonably be expected to endanger [that person's] life or physical safety. 5 U.S.C. § 552(b)(7)(F). Plaintiff's conviction for murder and his participation in a larger conspiracy clearly implicate issues of physical safety. See United States v. Billy Gene Harris, 198 F.3d 259 (10th Cir. 1999) (affirming denial of relief under 28 U.S.C. § 2255 and summarizing the history of plaintiff's criminal case); United States v. Billy Gene Harris, 956 F.2d 279 (10th Cir. 1992) (table) (affirming conviction but reversing the entry of a restitution order) (text of the decision is available at 1992 WL 33210). The serious and potentially violent nature of such crimes coupled with plaintiff's lengthy sentence supports BOP's treatment of strict confidentiality for the name of an inmate being separated from plaintiff while he remains incarcerated. Cf. Perrone v. FBI, 908 F. Supp. 24 (D.D.C. 1995) (upholding application of Exemption 7(F) in case involving a plaintiff who had been convicted of drug

trafficking offenses).  Accordingly, BOP's limited withholding of a name is appropriate and consistent with Exemption 7(F), as applied here in conjunction with Exemption 7(C).

### E.    All Reasonably Segregable Material Has Been Released to Plaintiff.

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte."  Trans-Pacific Policing Agreement v. United States Customs Serv., 177 F.3d 1022, 1028 (D.C. Cir. 1999).  In the course of processing all documents relating to plaintiff's request, each agency carefully evaluated each and every document for segregabilitiu.  Hardy Dec. ¶ 17; Boseker Dec. ¶ 30; Bordley Dec. ¶ 17;  Moorer Dec. ¶¶ 6, 8.  Where a document was withheld in its entirety, the agency determined affirmatively that no meaningful portions could be released without destroying the integrity of the documents as a whole.

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements."  Mead Data, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  Id.  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation

-28-

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content."  Mead Data, 566 F.2d at 261, n.55.

A review of the declarations and Vaughn indices submitted reveals that the FBI, USMS,

EOUSA, and BOP carefully reviewed the information and confirms that all reasonably

segregable non-exempt material has been released.  Armstrong, 97 F.3d at 578-79; Mead Data,

566 F.2d at 26.  Accordingly, the Court should find that all reasonably segregable material which

could be released to plaintiff has been released.

### F.    Plaintiff's Motion for Partial Summary Judgment Should Be Denied

Plaintiff's motion for partial summary judgment is directed primarily at defeating

affirmative defenses based on exhaustion of remedies.  Indeed, plaintiff's motion consists almost

exclusively of his own affidavit attesting to the authenticity of copies of his FOIA requests and

responses he received from various defendants.  Because defendant has not challenged the

completeness of plaintiff's efforts to exhaust the required administrative process, there is

currently no issue between the parties concerning exhaustion.

In particular, where plaintiff argues about the receipt of FOIA requests, plaintiff's motion

fails to demonstrate that his FOIA requests were received by the ATF, USMS or the Criminal

Division.  Indeed, given the apparent effort plaintiff has made to maintain complete records of

the events underlying this lawsuit, their absence from his motion for summary judgment actually

corroborates non-receipt by those entities.  In any event, ATF and USMS have now provided

responses to plaintiff's FOIA requests, and the Criminal Division is unable to do so because

plaintiff failed to respond to its reasonable request for additional information necessary to allow

it to do so.  See Hsu Dec. ¶¶ 7-14.

Relief is available under FOIA and courts have jurisdiction only when an agency has improperly withheld agency records.  5 U.S.C. § 552(a)(4)(B).  "[I]t is well established that under the FOIA, 'once the records are produced the substance of the controversy disappears and becomes moot, since disclosure which the suit seeks has already been made.'"  Trueblood v. United States Dep't of the Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996), quoting Crooker v. United States State Dep't, 628 F.2d 9, 10 (D.C. Cir.1980); see also Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982).  When defendant's motions for summary judgment is fully briefed and pending, the Court will have a sufficient record upon which to find that defendants have complied fully with the requirements of the FOIA and will be in a position to dispose of this case.  Tijerina v. Walters, 821 F.2d 789, 799 (D.C. Cir. 1987) ("'[H]owever fitful or delayed the release of information . . . if we are convinced that [the agencies] have, however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA.'").  Accordingly, plaintiff's motions should be denied.  See Voinche v. FBI, 999 F.2d 962, 963 (5th Cir. 1993) (because sole issue in action was lack of agency response, district court litigation was rendered moot by agency's disclosure determination);  Anderson v. HHS, 3 F.3d 1383, 1384 (10th Cir. 1993).

To the extent plaintiff's motion is predicated on the Privacy Act, defendants note that subsection (j)(2) of the Privacy Act allows an agency by regulation to exempt from mandatory disclosure:

> records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or

> parole authorities, and which consists of . . . (B) information
> compiled for the purpose of a criminal investigation, including
> reports of informants and investigators, and associated with an
> identifiable individual; or (C) reports identifiable to an individual
> compiled at any stage of the process of enforcement of the criminal
> laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).

Because all of the records sought by the plaintiff relate to the criminal investigation and

prosecution of the plaintiff and are maintained in the FBI's system of records, the records are

exempt from the access provisions of the Privacy Act by regulation.  Hardy Dec. ¶¶ 21-22;

Boseker Dec. ¶ 19; 28 C.F.R. § 16.96.  Although the records at issue are exempt under the

Privacy Act, the relevant agencies processed them under FOIA as well.  Id.

Plaintiff's January 22, 2006 letter to Department of Interior fails to make a proper FOIA

request because it asks for documentation to be created or a question to be answered.  Hudgins v.

Internal Revenue Serv., 620 F. Supp. 19, 21 (D.D.C. 1985) ("FOIA neither requires an agency to

answer questions disguised as a FOIA request . . .  or to create documents or opinions in response

to an individual's request for information.") (citations omitted), aff'd, 808 F.2d 137 (D.C. Cir.

1987) (table), cert. denied, 484 U.S. 803 (1987); see also Zamansky v. United States EPA, 767

F.2d 569, 571-74 (9th Cir. 1985); DiViaio v. Kelley, 571 F.2d 538, 542-43 (10th Cir. 1978)

(holding that plaintiff's questions–which inquired whether any pictures of him had been taken

and if so, whether they had been disseminated--were not within scope of FOIA).

Punitive damages are not available because there is no waiver of sovereign immunity for

such a claim in the FOIA or any other law applicable to the federal government.  See 28 U.S.C.

§ 2674.  Accordingly, plaintiff's premature motion for summary judgment should be denied.

## <u>Conclusion</u>

For all of these reasons, there are no genuine issues of fact regarding defendants'

processing of plaintiff's proper FOIA requests and referral of documents to other entities, and

defendants are entitled to judgment as a matter of law.

Dated: July 7, 2006.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney

/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

/s/_____
JANE M. LYONS, DC Bar #451737
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161

## CERTIFICATE OF SERVICE

I hereby certify that I have placed a copy of the foregoing DEFENDANTS' MOTION

FOR SUMMARY JUDGMENT (with exhibits in paper format) in the first class United States

mail, postage paid, marked for delivery to :

> **BILLY GENE HARRIS**
> No. 06244-062
> Federal Correctional Complex
> Box 3000 (Medium)
> Forrest City, Arkansas 72336

on this 7th day of July, 2006.


                                        /s/
                                        JANE M. LYONS, D.C. BAR #451737
                                        Assistant United States Attorney
                                        555 4th Street, N.W. - Room E4822
                                        Washington, D.C. 20530
                                        202/514-7161

-33-